UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

FILED
RICHARD W. NAGEL
CLERK OF COURT

2021 JUN -3 AM 11: 34

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST DIV. COLUMBUS

| | | |
|---|---|---|
| **ANTHONY VIOLA**<br>2820 Mayfield Road<br>Apartment # 205<br>Cleveland Heights, Ohio 44118<br>(330) 998-3290<br>MrTonyViola@ICloud.com, | ) ) ) ) ) ) ) | **CASE NO.**<br><br>2  21CV3088<br><br>**JUDGE:** [Judge Marbley, |
| Plaintiff | ) ) | MAGISTRATE JUDGE DEAVERS |
| -vs.- | ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **OHIO ATTORNEY GENERAL DAVE YOST**<br>30 E. Broad St., 14th Floor<br>Columbus, OH 43215<br>800-282-0515 | ) ) ) ) ) ) ) | **(42 U.S.C. § 1983)**<br><br>**REQUEST FOR TEMPORARY RESTRAINING ORDER** |
| **ASSISTANT OHIO ATTORNEY GENERAL DANIEL KASARIS**<br>30 E. Broad St., 14th Floor<br>Columbus, OH 43215<br>800-282-0515 | ) ) ) ) ) ) ) | **JURY DEMAND CONTAINED HEREIN** |
| **DAMIAN A. BILLAK**<br>23 Lisbon Street<br>Suite K<br>Canfield, Ohio 44406<br>330-702-2000, | ) ) ) ) ) ) | |
| Defendants | ) | |

## COMPLAINT

The Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and seeks a declaratory judgment and an injunction to redress the past deprivation and to prevent the further deprivation by the Defendants of rights, privileges and immunities secured by the United States Constitution, namely the First Amendment.

1

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 42 U.S.C § 1983 and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C. §§ 552a(g)(5), 552(a)(4)(B), and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Anthony L. Viola is a citizen of the United States and the State of Ohio.

4. Defendant Daniel Kasaris is the Assistant Ohio Attorney General, who is acting under color of law to chill the First Amendment rights of the Undersigned.

5. Defendant David Yost is the Ohio Attorney General, employs Kasaris, and is authorized under Ohio law to prosecute the Plaintiff.

6. Defendant Damian Billak is a licensed attorney in the State of Ohio and an indispensable party to this litigation.

## OVERVIEW OF THIS LITIGATION

7. This action, pursuant to the Constitution of the United States of America, alleges that the Defendants, including Daniel Kasaris, who has held public office, and is seeking to once again run for public office, have acted under color of law to violate the First Amendment rights of the Plaintiff, and other citizens, by threatening prosecution for statements made on line and in printed materials. Defendants have demanded the Plaintiff "take down" the web site, FreeTonyViola.com, and that the Plaintiff "cease and desist communicating" with elected officials and members of the public. The threat of prosecution is designed to prevent, and are now preventing, the dissemination of information about Kasaris' actions and conduct.

8. The Plaintiff maintains that all information on the web site is truthful and accurate. Moreover, each and every statement is supported by evidence and documents posted in the website's on-

line "Evidence Locker." Plaintiff is requesting this Court issue a declaration that the Defendants' actions are unconstitutional, and issue a preliminary injunctive relief to end further infringement of First Amendment rights.

## STATEMENT OF FACTS

9. Plaintiff was exonerated at a subsequent criminal trial on identical charges at issue in the first proceeding.

10. Plaintiff Anthony L. Viola was simultaneously prosecuted in both federal and state court, on identical charges, by the same prosecution team, through a multi-jurisdictional Mortgage Fraud Task Force funded by the Bureau of Justice Assistance Grant # 2009-SC-B9-0080. These prosecutions featured three indictments and two criminal trials with opposite results.

11. The Mortgage Fraud Task Force was formed by the Ohio Attorney General's Office by the Ohio Organized Crime Commission pursuant to Ohio Revised Code Section 177.01.

12. Following the formation of the Task Force, the Attorney General's Office assigned several of its employees, including Assistant Attorney General Micah Ault and an administrative employee, Dawn Pasela, to the Task Force.

13. The Task Force alleged the undersigned devised the "Nation's largest mortgage fraud scheme" and devised a scheme to steal $46 million by duping lenders including JP Morgan Chase and Citigroup into making 'no money down' mortgage loans that did not meet the banks' underwriting guidelines. Plaintiff maintained his innocence and refused to plead guilty to any charges, under any circumstances.

14. Following a federal conviction in 2011, but prior to the commencement of the second trial prosecuted by Defendant Kasaris, Task Force Office Manager Dawn Pasela provided the undersigned with evidence that state and federal prosecutors, including Defendant Kasaris, stated in writing did not exist, and which was not produced before the first trial.

15. Evidence provided by Ms. Pasela to the undersigned included: (a) an FBI 302 Interview summary with a lender employee who testified at both trials that lender employees were authorized to approve 'no money down, cash back' mortgage loans. Both Defendant Kasaris and Assistant US Attorney Mark Bennett stated in WRITING this interview did not exist; (b) Lender closing instructions and underwriting worksheets that prove lenders KNOWINGLY made 'no money down' mortgage loans to borrowers without income or assets, and were not duped into making such loans; and (c) Lender program guidelines that proved the government's theory of the case was wrong – banks promoted and offered the very 'no money down, cash back' mortgage loans prosecutors alleged the Plaintiff duped them into making.

16. In addition to providing key evidence that led to an acquittal, Ms. Pasela assisted the Plaintiff with trial preparations, made defense trial exhibits and prepared questions to ask government witnesses. Ms. Pasela said, "Forget about reasonable doubt, we have enough evidence to prove you are innocent." Ms. Pasela also advised – and the Plaintiff agreed – to proceed to the second trial Pro Se, without legal counsel.

17. Ms. Pasela offered to testify as a defense witness about misconduct by Defendant Kasaris, and other members of the Task Force, which included:

    - Suppressing exculpatory evidence;
    - Undisclosed payments to government witness Kathryn Clover;
    - A romantic relationship between Defendant Kasaris and Clover; and
    - Forging Ms. Pasela's name on an Evidence Log.

18. Ms. Pasela also described government intrusion into the Sixth Amendment right to counsel when Defendant Kasaris directed Ms. Pasela to record a series of post-indictment conversations with the Plaintiff so Defendant Kasaris and other members of the Task Force could obtain confidential defense trial strategy information.

19. Ms. Pasela was ordered by Defendant Kasaris to donate funds towards the Plaintiff's legal fees so he could use her cancelled check to identify the law firm's bank account and track investigative expenses and identify potential defense.

4

20. Once Kasaris discovered that Pasela was a defense witness, he threatened Pasala **in writing** "with prosecution." She was advised to "leave town" or face "federal prison" if she appeared in court. During the second trial, Ms. Pasela was found dead in her apartment by her Father, **Exhibit A,** "Government Intrusion into the Sixth Amendment Right to Counsel Documents."

21. When substantially different evidence was introduced at the second trial, actual innocence was established, kindly compare USA v. Viola, 08-cr-506, N.D. Ohio, guilty verdict and 150 month prison sentence, with the subsequent acquittal on the exact same charges, Ohio v. Viola, 10-cr-543886 and 10-cr-536877, Cuyahoga County Common Pleas Court. Judge Daniel Gaul, who presided over the second trial, has taken the extraordinary step of stating in writing that the Plaintiff is innocent, was wrongfully incarcerated, and that Prosecutor Kasaris committed "misconduct," **Exhibit B**, Letter from Judge Gaul.

## Overview of FreeTonyViola.com web site

22. Following the acquittal at the second trial, the Plaintiff requested an evidentiary hearing so he could present the exact same proof of innocence he utilized at the second trial to the federal judiciary. But no federal judge has ever allowed the Plaintiff to present proof of his innocence in federal court. Moreover, no inquiry into the death of Ms. Pasela has ever taken place.

23. Nevertheless, the Plaintiff retained former FBI Agent Robert Friedrick to create a detailed record of misconduct by Defendant Kasaris and the Task Force.

24. As part of the investigative initiative, and while he was in jail, Plaintiff's friends, family and colleagues funded a website, www.FreeTonyViola.com, to solicit investigative leads from the public and to keep supporters updated about important developments in the case.

25. The FreeTonyViola.com website attracted numerous leads from individuals who provided evidence, sworn statements and details about criminal or unethical activities by Defendant Kasaris:

5

- Bryan Butler, who dated Kathryn Clover, saw erotic text messages between Kasaris and Clover in which Kasaris professed his "endless love" for Clover. Butler then submitted a sworn statement to the Plaintiff's investigator, Mr. Friedrick;
- Matthew Fairfield, who was married to Clover, also submitted a sworn statement that he saw Kasaris and Clover kissing and said Clover acknowledged the affair to him;
- Lucas Fairfield, Matt Fairfield's brother, saw Kasaris and Clover at a Cleveland Indians baseball game;
- Susan Kasaris, the wife of Defendant Kasaris, wrote a series of Facebook messages about Defendant Kasaris' affair with Clover, which were obtained by the FreeTonyViola.com Investigative Team;
- Kelly Patrick, the former sister in Law of Defendant Kasaris, was copied on emails between Kasaris and Clover from Kasaris' private Yahoo email account that discuss "Banging in the car" and "hand jobs." Ms. Patrick provided the emails and submitted a sworn statement confirming the affair between Defendant Kasaris and Ms. Clover;
- Kasaris paramour Kelly Connors contacted the undersigned to confirm the Clover-Kasaris affair and claimed Defendant Kasaris and Clover frequently met for sex at Kasaris' apartment located at 14110 Pine Forest Drive, Apartment # 103, North Royalton, Ohio 44133, and
- The family of Dawn Pasela also submitted sworn statements to assist the undersigned, **Exhibit C,** "Investigative Leads from FreeTonyViola.com website."

## Overview of Justice Department and FBI Admissions of Making False Statements about Evidence in the Plaintiff's cases

26. Based upon documents provided by Ms. Pasela, and based on the results of the second trial, the Plaintiff alleged that state and federal prosecutors, including Defendant Kasaris and Assistant U.S. Attorney Mark Bennett, suppressed exculpatory evidence, and/or shifted exculpatory evidence between jurisdictions and locations to hide it from the defense.

27. For many years, the federal government maintained that all relevant documents were provided to the defense prior to the federal trial and that the Justice Department was not obligated to search the Task Force location for evidence in the Plaintiff's criminal cases.

28. On April 3, 2019, the United States Court of Appeals for the Third Circuit rejected the Justice Department's contention that it was not required to search the Task Force location for evidence, and appointed the law firm of Covington & Burling (www.cov.com) to represent the Plaintiff on a Pro Bono basis, Viola v. U.S. Department of Justice, et. al., case number 18-2573, Document Numbers 0031132002632 and 003113202649.

29. Beginning in 2019 and throughout 2020, both the Justice Department and FBI admitted their sworn statements about evidence in the Plaintiff's cases were false, and that all prior rulings in favor of the government by the District Court should be vacated. As a result, the Plaintiff was released from jail after nearly a decade.

30. After the Justice Department and the FBI admitted making false statements about evidence, the Court of Appeals halted the appeal and remanded the case to the District Court so that both the FBI and Department of Justice could produce evidence that was not provided earlier, Viola v. U.S. Department of Justice, et. al., Document Number 102, July 10, 2020.

31. According to an FBI admission, the FBI discovered over 10,000 pages in its records system related to the Plaintiff's case that it was previously unaware of. The FBI claimed it only became aware of evidence in its own records system "when it received those records" from the U.S. Attorney's Office and "discovered that they had not been processed ... The FBI investigated why the records were not initially processed and found that, when it had initially searched for and gathered records, it had inadvertently failed to obtain all portions of the responsive records. The FBI intends to process the additional records" totaling 10,000 pages "expeditiously," Viola v. Department of Justice, Case: 18-2573, Third Circuit, Document: 99. p. 2.

32. Earlier in the same litigation, Assistant U.S. Attorney Michael Colville informed the federal judiciary that the Executive Offices for United States Attorneys made false statements in

7

affidavits and discovered additional records that were previously withheld, and that he "regrets those inaccuracies and the resulting inconvenience." The district court record and the record before the Court of Appeals in this case contains the FBI 302 provided to the Plaintiff by Ms. Pasela, along with other exculpatory evidence suppressed by Kasaris, see Joint Appendix to Appellate Brief, filed July 15, 2019, and **Exhibit D,** "Government Admissions of making False Statements about Evidence."

**Defendant Kasaris' Knowing Use of Kathryn Clover's Perjured Testimony**

33. Defendant Kasaris and his colleague, federal prosecutor Mark Bennett, knowingly presented the perjured testimony of government Kathryn Clover to obtain a federal conviction.

34. Before the federal trial, Clover signed a plea deal with the government, and agreed to provide "substantial assistance" to Prosecutors Mark Bennett and Assistant Ohio Attorney General Dan Kasaris. But shortly after her trial testimony in USA v. Viola, 08-cr-506, N.D. Ohio, she alerted Bennett and Kasaris that she wanted to withdraw her testimony, which falsely claimed the Plaintiff conspired with her to commit mortgage fraud. Clover asked to be recalled to the stand to correct her false testimony, but Bennett refused, stating that her false testimony "was in the interests of justice" and that withdrawing her false statements "jeopardized the outcome of the case."

35. The Plaintiff has obtained documentary proof that the government knowingly utilized perjured testimony, including: (a) Written admissions <u>by prosecutors</u> that Clover committed perjury; (b) A psychological report where Clover claims she asked to withdraw her false testimony DURING THE FIRST TRIAL, but both Kasaris and Bennett refused; and (c) Clover's recantation of her federal testimony and admissions of lying in federal court at the second trial.

36. Defendant Kasaris allowed Clover to take the Fifth Amendment as a government witness at the second trial.

8

37. Documents obtained by the FreeTonyViola.com investigative team confirm that Defendant Kasaris hired Clover as an employee of the prosecutor's office but fraudulently portrayed her as a "fact witness" in multiple criminal proceedings.

38. Attorney Jaye Schlachet has stated that Clover, while working inside the prosecutor's office, destroyed evidence in the Plaintiff's criminal case. According to Schlachet, "any attempt to destroy evidence by Defendant [Clover] was done for the purpose of defending against her own criminal prosecution and not to impede litigation of Plaintiff," Viola v. Clover, Case No. CV 20 936897, Cuyahoga County Common Pleas Court, 12/29/20 filing, pages 12-13.

39. Not only did Defendant Kasaris fail to withdraw Clover's false testimony, Defendant Kasaris CONTINUED to utilize her as a government witness in a dozen cases, until she finally recanted her false testimony at the second trial, Ohio v. Viola, 10-cr- 536877. At that trial, Clover admitted her plea agreement was false, and that she did not conspire with the Plaintiff to commit fraud, saying "I told Bennett that was wrong," then said, "I take the Fifth," see Kasaris letter describing Clover's testimony, and other documents proving government use of perjured testimony, at **Exhibit E**, "Kathryn Clover Perjury documents."

**Defendant Kasaris' Use of a Private Yahoo Email Account to Conduct Official Business**

40. Multiple individuals provided sworn affidavits that Defendant Kasaris communicated with Kathryn Clover using his private Yahoo email account.

41. Once the Plaintiff obtained one such email – that was affixed with Kasaris' official signature as a prosecutor -- the undersigned made public records requests to the Ohio Attorney General, asking them to search the Kasaris Yahoo account for emails that related to his official duties, including his communications with government witness Clover.

42. The Attorney General refused, and litigation in the Ohio Court of Claims ensued, and is continuing. But in that litigation, Kasaris submitted a sworn affidavit admitting he used his Yahoo email account for official business, Viola v. Ohio Attorney General, Ohio Court of Claims Case No. 2020-00507PQ, **Exhibit F,** Kasaris Affidavit.

### Defendant Kasaris is a Public Figure who has Served in Elected Office and is Once Again Raising Campaign Funds

43. Defendant Kasaris has chosen a life in the public eye, has run for public office on multiple occasions, and been elected to serve multiple terms on the North Royalton, Ohio City Council.

44. The Supreme Court has held that public officials have virtually no ability to seek redress for unfavorable statements or communications about them, and that the truth is an absolute defense to any claims of libel, New York Times Co. v. Sullivan, 376 U.S. 254 (1964).

45. Kasaris meets the definition of a public figure because:

   - He has served as an elected official for a decade, **Exhibit G**.
   - Is raising campaign funds to run for Mayor of North Royalton, or other elected office, **Exhibit H**.
   - Is a Senior Assistant Ohio Attorney General who is pervasively involved in public affairs, **Exhibit I**.

46. Kasaris actively seeks the limelight by, for instance, maintaining an active presence on social media, cultivating reporters and making frequent press statements. Moreover, Kasaris aggressively seeks media coverage by, for instance, retaining an agent in California to promote his television appearances on true crime networks like the Oxygen network, **Exhibit J**.

### OVERVIEW OF FIRST AMENDMENT CLAIMS

### Overview of media coverage, recent Blogs and Postcard Mailers

47. Kasaris has been the subject of recent media coverage that detail his misconduct in the Plaintiff's criminal case and his romantic relationship with Kathryn Cover, **Exhibit K**.

48. Recent blogs on the FreeTonyViola.com website have kept the public updated about misconduct committed by Kasaris and include the publication of some of his emails to/from Kathryn Clover, **Exhibit L**.

49. To alert members of the public, as well as journalists and citizens of North Royalton about illegal and unethical actions of Kasaris, a series of post cards have been disseminated. These postcards reference court filings and documents in support of their claims and have been periodically mailed since 2016, **Exhibit M**.

**Defendant Kasaris is Acting of Color of Law to Chill First Amendment Rights**

50. Friends and supporters started a petition on Change.org to hold Defendant Kasaris accountable for his improper actions. In April, 2021, Defendant Kasaris identified himself as a prosecutor when he contacted Change.org to ask that the petition on that platform -- with nearly 4,000 signatures -- be removed, **Exhibit N**.

51. In May, 2021, Defendant Damian Billak, Esq. wrote a letter to the Plaintiff, identifying himself as Defendant Kasaris' attorney and demanding that all blog posts, post card mailings and any "communications" concerning Defendant Kasaris cease immediately, under threat of criminal prosecution, **Exhibit O**.

52. Defendant Billak's letter also contains a "Do Not Contact" list that included elected officials, political leaders and thousands of individuals. For instance, the "Do not contact" list includes "any Realtor or employee of ReMax," which encompasses thousands of individuals and prohibits the Plaintiff from seeking advice from real estate agents. The demand further orders the Plaintiff not to contact "Any employee" of the "Cuyahoga County Prosecutor's Office," but the Plaintiff is in touch with their Wrongful Conviction Unit, asking that department to join his efforts at having Defendant Kasaris investigated and criminal cases where Kathryn Clover testified reopened. Moreover, the Plaintiff is seeking public records from the Cuyahoga County Prosecutor's Office. The demand letter further states not to contact "Any person who has ever signed a petition for Dan Kasaris or donated money to Friends of Kasaris" but the Plaintiff has no way of knowing who all of those individuals are.

11

53. Plaintiff wrote to Defendant Billak seeking clarification of his letter but, as of this date, no response has been forthcoming, **Exhibit P**.

54. The threat by Defendant Kasaris and Defendant Billak to prosecute the undersigned are credible, and these individuals have far more authority than an ordinary citizen to simply submit a complaint to local law enforcement.

55. According to the Ohio Attorney General's website, it can initiate prosecutions and civil litigation throughout the state of Ohio, **Exhibit Q**.

56. Defendant Dave Yost has stated on Twitter that "Dan Kasaris is a top-notch career prosecutor in the Attorney General's Office – he handled several of my corruption cases … This case couldn't have a tougher, more experienced prosecutor," **Exhibit R**.

57. The Task Force's Office Manager, Dawn Pasela, was found deceased shortly after her scheduled testimony, yet Defendant Kasaris was never investigated or disciplined for his role in the intrusion into the Sixth Amendment right to counsel.

58. Defendant Kasaris' romantic relationship with government Kathryn Clover is widely knows to judges, attorneys and the public – yet no one does anything about it and the Ohio Attorney General continues to employ Kasaris and assigns him high profile cases.

59. Plaintiff believes Defendant Kasaris can do whatever he pleases, without fear of any consequences. According to Kasaris's girlfriend Kelly Connors, Kasaris feels "invincible" because Defendant Yost will protect him at all costs.

60. Defendant Billak also contacted the probation officer overseeing the Plaintiff's supervision in an attempt to have the Plaintiff re-incarcerated, then copied that individual on the May 20th letter.

61. Assistant Ohio Attorney General Daniel Kasaris has, in fact, prosecuted the undersigned before, while the Ohio Attorney General's Office established the Task Force that prosecuted the Plaintiff.

62. Unlike a private citizen, Defendant Kasaris has been a prosecutor for many years, has multiple connections in the law enforcement community and has presented cases to grand juries. And unlike a private citizen, Kasaris is currently prosecuting cases in courts throughout Ohio. On his own, or in cooperation with others, Defendant Kasaris has the ability to initiate a prosecution of the Plaintiff.

63. Defendant Billak's letter refers to the Plaintiff's "unlawful behavior" and lists several "crimes" and demands that the undersigned not communicate with "courts." Defendant Billak's letter does not threaten civil remedies or a suit for defamation, but specifically refers to a criminal prosecution and lists several criminal acts.

64. Unlike a private citizen, Defendant Kasaris has actually prosecuted a blogger. Kasaris initiated and prosecuted Elsebeth Baumgartner, who ran a blog called Erie Voices, State of Ohio v. Elsebeth Baumgartner, CR-06-478555, Cuyahoga County Common Pleas Court. Ms. Baumgartner was imprisoned for many years based upon statements she made in in her blog, **Exhibit S**.

65. Since complaint seeks restraining order, Defendant Ohio Attorney General Dave Yost is named in his official capacity, while Defendant Damian Billak has been named as a defendant because any restraining order would involve him.

## CLAIM FOR RELIEF

66. Plaintiff re-alleges and incorporates by reference each and every statement made and all of the allegations in Paragraphs 1 - 65 of this complaint.

67. Plaintiff and others assisting the Plaintiff have already suffered and are continuing to suffer, and will continue to suffer deprivation of their First Amendment rights unless the relief requested in this complaint is granted. Specifically, the Plaintiff's First Amendment rights

13

have been and are being chilled by the suspension of blog posts about Kasaris on the FreeTonyViola.com web site and the suspension of the publication of additional post cards.

68. The Plaintiff also seeks a declaratory judgment that the "Do Not Contact" list is contrary to law and that he may once again make public records requests and otherwise contact courts, and offices that handle public records.

69. The Plaintiff has no adequate or complete remedy at law against the actions by the Defendants other than injunctive and declaratory relief sought in this complaint.

70. Plaintiff is not seeking this relief, or similar relief, in any other forum and is not seeking monetary relief.

## CONCLUSION

As outlined above, the actions of the defendants, acting under color of law, have chilled the First Amendment rights of the Plaintiff and prevented him from engaging in public discourse about an elected official and a public figure. An immediate injunction against prior restraints of public statements, as well as a declaratory judgment in favor of the Plaintiff, is required by law and the United States Constitution.

**WHEREFORE**, Plaintiff respectfully requests this Court:

(1) Declare the actions of the Defendants unconstitutional;
(2) Issue an order enjoining the Defendants from prosecuting, or threatening to prosecute the Plaintiff, or any citizen assisting with the FreeTonyViola.com website;
(3) Issue an order that the Plaintiff is permitted to contact local elected officials, make records requests and continue interacting with political leaders about his case;
(4) Issue a Temporary Restraining Order to stop any prosecution, or threats of prosecution, until such time as a hearing can be scheduled;

(5) Refer the romantic relationship between Kasaris and government witness Kathryn Clover, as well as the use of perjured testimony to obtain a conviction, to the Ohio Supreme Court Office of Discipline Counsel for an investigation; and
(6) For any additional relief deemed equitable

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) Is supported by existing law; (3) The factual contentions have evidentiary support; (4) That all attachments to the complaint are authentic; and (5) The complaint complies with Rule 11.

Respectfully submitted,

Anthony Viola
2820 Mayfield Road # 205
Cleveland Heights, Ohio 44118
(330) 998-3290
MrTonyViola@icloud.com

June 4, 2021