IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY VIOLA, | : |
|     Plaintiff, | :   Case No. 2:21-CV-3088 |
| v. | :   CHIEF JUDGE ALGENON L. MARBLEY |
| | :   Magistrate Judge Elizabeth P. Deavers |
| OHIO ATTORNEY GENERAL DAVID YOST, | : |
| ASSISTANT OHIO ATTORNEY GENERAL DANIEL KASARIS, | : |
| and | : |
| DAMIAN A. BILLAK, | : |
|     Defendants. | : |

**OPINION & ORDER**

**I.  INTRODUCTION**

This matter comes before the Court on Plaintiff Anthony Viola's pro se Motion for a Temporary Restraining Order. (ECF No. 2). Mr. Viola seeks an injunction against Defendants Ohio Attorney General David Yost, Assistant Ohio Attorney General Daniel Kasaris, and Damian Billak, a criminal defense attorney in Akron, Ohio. This Court held a 65.1 conference on Thursday, June 24, 2021. For the following reasons set forth below and orally on the record, this Court **DENIES** the Motion for a Temporary Restraining Order. (*Id.*).

**II.  BACKGROUND**

Mr. Viola brings this action pursuant to 42 U.S.C. § 1983 and seeks a declaratory judgment and a temporary restraining order against Defendants. Plaintiff Viola alleges that Defendants have threatened prosecution for statements made online on Mr. Viola's website, www.FreeTonyViola.com, and in printed materials. Mr. Viola maintains that all the information

1

on the website is truthful and accurate. (ECF No. 1 ¶ 8). The website details allegations of prosecutorial misconduct and inappropriate behavior by Defendant Kasaris. Furthermore, Mr. Viola claims that he has been barred from making public records requests.

### A. Federal and State Court Prosecutions

Beginning in 2011, Plaintiff Anthony Viola faced federal- and state-court prosecutions through a multi-jurisdictional mortgage fraud task force comprised of state, local, and federal agencies. (*Id.* § 10–11).

#### 1. State Court Prosecution

On April 1, 2011, Anthony Viola was tried and convicted by a jury on thirty-five of thirty-six counts arising from a mortgage fraud scheme in the Cuyahoga County Court of Common Pleas. Defendant Daniel Kasaris serves as Senior Assistant Attorney General in the Special Prosecutions Section. (Ex. F). Previously, Mr. Kasaris was an Assistant Prosecutor with the Cuyahoga County Prosecutor's Office, which was the office that criminally prosecuted Mr. Viola in state court. The Mortgage Fraud Task Force was formed by the Ohio Attorney General's Office, and Defendant Kasaris was a prosecutor on the Task Force. (*Id.*). After Mr. Viola's conviction, a Task Force whistleblower, Dawn Pasela, provided Mr. Viola with evidence that proved exculpatory. (*Id.* ¶¶ 14–16). Specifically, Ms. Pasela allegedly told Mr. Viola that the Task Force had withheld evidence that should have been produced before trial and Defendant Kasaris engaged in prosecutorial misconduct. This prosecutorial misconduct allegedly included: (1) suppressing exculpatory evidence; (2) undisclosed payments to government witness Kathryn Clover; (3) a romantic relationship between Defendant Kasaris and Ms. Clover; and (4) forging Ms. Pasela's name on an evidence log. (*Id.* ¶ 17).

Ms. Pasela then allegedly offered to testify as a defense witness. Mr. Viola alleges that once Defendant Kasaris discovered that Ms. Pasela was a defense witness, Defendant Kasaris threatened Ms. Pasela in writing with prosecution were she to testify. (*Id.* ¶ 20). Ms. Pasela indicated to Mr. Viola that she would not testify as a result of the threatened prosecution, though she had earlier volunteered to do so. Soon before she was originally set to testify, Ms. Pasela was found dead in her apartment; the cause of death was listed as acute alcohol intoxication. (Ex. A).

In April 2012, after a jury trial, where Mr. Viola appeared pro se, Mr. Viola was acquitted of all fifty-nine state charges brought against him. Mr. Viola, however, remained incarcerated due to a parallel federal-court conviction.

On February 17, 2017, Common Pleas Judge Daniel Gaul (the judge who presided over the state-court trial) sent then-incarcerated Mr. Viola a letter "to express [his] feelings of regret on [Mr. Viola's] continued incarceration." (ECF No. 1-2 at 2). Judge Gaul suggested that then-newly elected Cuyahoga County Prosecutor Michael O'Malley "may be willing to take a fresh look at Daniel Kasaris' misconduct in [Mr. Viola's case]." (*Id.*).

Mr. Viola filed an appeal from his federal judgment of conviction and sentence, which is discussed below.

2. *Federal Court Prosecution*

On May 6, 2009, Mr. Viola, who then worked as the president and owner of Realty Corporation of America, LLC, which sold properties throughout the Northern District of Ohio, was indicted with helping orchestrate and control a mortgage fraud scheme. *United States v. Viola*, No. 1:08-cr-506 (N.D. Ohio 2008). Defendant Kasaris was not involved in this prosecution. The federal court case resulted in a guilty verdict and a 150-month prison sentence.

Mr. Viola engaged in numerous post-conviction relief efforts in the federal courts after his 2012 state-court acquittal. In 2019, Mr. Viola argued that DOJ and the FBI admitted in sworn statements that evidence in Mr. Viola's case was false and that all prior rulings in the government's favor should be vacated. Such post-conviction arguments included alleging that state and federal prosecutors, including Defendant Kasaris and Assistant U.S. Attorney Mark Bennett (not a party to this case), suppressed exculpatory evidence and acted improperly in general. (*Id.* ¶ 26).

Mr. Viola also alleged that it was the federal government's position that all relevant documents were provided to the defense prior to the federal trial, and the Department of Justice was not obligated to search the Task Force location for evidence in the Plaintiff's criminal cases. (*Id.* ¶ 27). On April 3, 2019, however, the Third Circuit rejected DOJ's contention that it was not required to search the Task Force location for evidence and appointed a law firm, Covington & Burling, to represent Mr. Viola on a pro-bono basis. (*See* Ex. D (referring to "Viola v. U.S. Department of Justice et al., case number 18-2573")).

As a result of this new evidence, and after about a decade of incarceration, Mr. Viola was released from prison in May 2020.

### B.  FreeTonyViola.com

While Mr. Viola was incarcerated, his friends and family created a website, www.FreeTonyViola.com, to solicit information in support of the post-conviction relief efforts. (*Id.* ¶ 24). Mr. Viola states that the website attracted numerous leads from individuals who provided evidence about allegedly criminal or unethical activities by Defendant Kasaris. Many of these allegations relate to the alleged relationship between Defendant Kasaris and government witness Kathryn Clover.

1. *Cease-and-Desist Demand Letter & Reply*

On May 20, 2021, Defendant Damian Billak, a criminal defense attorney, wrote a letter to Mr. Viola and identified himself as Defendant Kasaris' attorney. (*Id.* ¶ 51). That demand letter ordered that all blog posts, postcards, and any communications concerning Defendant Kasaris cease under threat of criminal prosecution. (*Id.*). The letter also contained a broad "Do Not Contact" list, including: (1) elected officials; (2) political individuals; (3) any Relator or employee of ReMax; (4) any employee of Cuyahoga County Prosecutor's Office; and (4) any person who signed a petition for Defendant Kasaris or donated money to "Friends of Kasaris." (*Id.* ¶ 52). Mr. Viola further alleges that Defendant Billak contacted the probation officer overseeing Mr. Viola's supervision in an attempt to have Mr. Viola re-incarcerated. (*Id.*).

Mr. Viola responded to Defendant Billak's letter on May 31 and requested that Defendant Billak clarify the scope and intent of the letter. In addition, Mr. Viola wrote that, to the best of his knowledge, all statements on the FreeTonyViola.com website and accompanying promotional mailings and emails were truthful and accurate. Mr. Viola also stated he was planning to temporarily suspend the publication of additional postcards and blogposts pending clarification from Defendant Billak.

2. *Role of Attorney General Yost*

Defendant Dave Yost, Ohio Attorney General, appears only to be named as a defendant based on a tweet where the Ohio Attorney General referred to Defendant Kasaris, which stated: "Dan Kasaris is a top-notch career prosecutor in the Attorney General's Office - he handled several of my corruption cases . . . This case couldn't have a tougher, more experienced prosecutor." (Ex. R (referring to a different case)).

### III. STANDARD OF REVIEW

A Temporary Restraining Order ("TRO") is an emergency measure. *See McGirr v. Rehme*, Case No. 16-464, 2017 WL 1426456, at *2, 2017 U.S. Dist. LEXIS 61151, at *10 (S.D. Ohio Apr. 21, 2017). Fed.R.Civ.P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979).

In determining whether to grant or deny a temporary restraining order or a preliminary injunction, courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal quotation marks omitted). While a court is permitted to consider the other factors, immediacy and irreparability of harm are threshold considerations since a temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo." *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996)). The "burden of proving that the circumstances clearly demand such an extraordinary remedy is a heavy one" since the party seeking "the injunction must establish its case by clear and convincing evidence." *Id.* (quoting another source).

### IV. LAW & ANALYSIS

On June 3, 2021, Mr. Viola, proceeding pro se, moved for a temporary restraining order to enjoin Defendants from threatening to prosecute or prosecuting Plaintiff, or individuals assisting Plaintiff, for disseminating information through the website or mailed materials. (ECF No. 2). He

contends that such threats have a chilling effect on speech and thus are redressable under the First Amendment, pursuant to 42 U.S.C. § 1983.

### A.  Irreparability of Harm

The first factor the Court must consider is the irreparability of harm that the Plaintiff would face absent injunctive relief. Where irreparable harm is based upon a violation of a plaintiff's constitutional rights, that violation, no matter how temporary, is sufficient to show irreparable harm. *See Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 578 (6th Cir. 2002); *Planned Parenthood Southwest Ohio Region v. Hodges*, 138 F.Supp.3d 948, 960 (S.D. Ohio 2015) ("[W]hen a constitutional right is being threatened or impaired, a finding of irreparable harm is mandated.").

In this case, Mr. Viola suggests that he faces irreparable harm given the alleged threatened prosecution for continued dissemination and publishing of the offending materials. For example, Mr. Viola represents that he has not posted a blog post about Defendant Kasaris because of the threats of prosecution contained in Defendant Billak's cease-and-desist letter. In addition, Mr. Viola was set to begin a new postcard mailing campaign but placed that on hold after receipt of Defendant Billak's letter.

This Court finds that Mr. Viola has not yet carried his burden to demonstrate irreparable harm. "[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury . . . . Rather[,] the plaintiffs must show a chilling effect on free expression." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) (internal quotations omitted)). In other words, Mr. Viola cannot show irreparability until he establishes a likelihood of success on the constitutional injury—something that he has not yet done. This Court reviews the likelihood of success on the merits below.

7

*1. Likelihood of Success on the Merits*

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. Amend. I. Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Furthermore, § 1983 has two basic requirements: (1) state action that; (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)).

Mr. Viola claims that Defendants (two of whom are public figures, one of whom is a private citizen) have threatened to prosecute him for disseminating information through the website or postcards. The prototypical First Amendment case identifies and challenges an official state policy as the basis of relief. Here, however, the primary basis for Mr. Viola's allegations stem from the cease-and-desist letter that Defendant Billak sent while representing Defendant Kasaris.

Thus, Mr. Viola has not yet demonstrated the state-action requirement even to bring this matter within the ambit of the First Amendment and § 1983. Defendant Kasaris is a public official who hired a private attorney, Defendant Billak, to send Plaintiff Viola a cease-and-desist letter. There is a question whether Defendant Kasaris acted out of a state-imposed duty or, rather, to safeguard his personal reputation. But because any person may hire a private attorney to threaten private legal action, it cannot be said that the letter was "possible only because [the Defendants were] clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Instead, the "nature of the act performed" was "functionally equivalent to that of any private citizen." *Meadows v. Enyeart*, 627 F. App'x 496, 501 (6th Cir. 2015) (quoting another source). Therefore, this Court declines to find that Defendant Kasaris acted under color of state law in having his attorney, Defendant Billak, send the cease-and-desist letter; it is dubious that Plaintiff could recover in a §

1983 action on the basis of that letter alone. *Meadows v. Enyeart*, 627 F. App'x 496, 501 (6th Cir. 2015) (Because any person may hire a private attorney to threaten private legal action, it cannot be said that the letter was possible only because [the Defendants] were clothed with the authority of state law") (internal quotation marks omitted). Mr. Viola cannot establish that he faces irreparable harm premised upon the cease-and-desist demand letter because he has not shown a likelihood of success on the merits of his First Amendment claim.

### B. Immediacy of Harm

In conjunction with the potential of irreparable harm absent injunctive relief, the Court must also consider the immediacy of the harm Plaintiffs face. Fed.R.Civ.P. 65 (b)(1)(A); *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefit Programs*, No. 2:13-CV-357, 2013 WL 12368588, at *2 (S.D. Ohio Apr. 25, 2013) (denying TRO in part because plaintiff failed to establish immediate harm where preliminary injunction hearing would occur before harm).

On the one hand, Mr. Viola received a cease-and-desist letter and, as a result, has not published or disseminated information that he would like to publish and disseminate. Moreover, Mr. Viola replied to Defendant Billak's letter on May 31, requesting that Defendant Billak reply to the letter within the next seven days. Mr. Viola filed this lawsuit on June 3, 2021. Given that Mr. Viola has refrained from publishing or disseminating more materials and the speed with which he filed a lawsuit after receipt of the letter, there is a shadow of an immediate harm. In addition, Mr. Viola represented at the 65.1 conference that the website, FreeTonyViola.com, has matured into a repository for allegations of prosecutorial misconduct by Defendant Kasaris. He also alleges that Defendant Kasaris, within the scope of his employment, has threatened to prosecute individuals who have commented on the website. This, Mr. Viola argues, supports the immediacy-of-harm argument as well.

9

On the other hand, the letter does not have the force of law and does not, in fact, *prohibit* Mr. Viola from publishing additional materials (something a non-lawyer is not expected to know, admittedly). In addition, Mr. Viola wrote in his May 31 response that he would temporarily suspend the publication of additional postcards and blogposts. The voluntary cessation of publishing and disseminating materials indicates that there is no immediacy of harm since Mr. Viola has demonstrated an ability to stop publishing materials without suffering harm. Thus, there is no immediacy of harm justifying the issuance of a temporary restraining order.

## V. CONCLUSION

For the reasons set forth above, this Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order. (*Id.*).

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  August 17, 2021**